## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| **Shanna Jagoda,** | |
| *Plaintiff,* | Case No: |
| **v.** | |
| **Burton Carol Management, LLC, Experian Information Solutions, Inc., Equifax Information Services, LLC, Trans Union LLC, Ideal Collection Services, Inc., and Shelly Fougerousse,** | **JURY TRIAL DEMANDED** |
| *Defendants.* | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, the Plaintiff, **Shanna Jagoda** ("**Ms. Jagoda**"), by and through her attorneys, Seraph Legal, P.A., and complains of the Defendants, **Burton Carol Management, LLC** ("**Burton**"), **Experian Information Solutions, Inc.** ("**Experian**"), **Equifax Information Services, LLC** ("**Equifax**"), **Trans Union LLC** ("**Trans Union**"), **Ideal Collection Services, Inc.** ("**Ideal**"), and **Shelly Fougerousse** ("**Fougerousse**") (collectively, the **"Defendants"**), stating as follows:

## PRELIMINARY STATEMENT

1.      This is an action brought by Ms. Jagoda against Ideal and Fougerousse for violations of the *Fair Debt Collection Practices Act*, 15 U.S.C. § 1692, *et seq.* ("**FDCPA**"), against Burton for violations of the *Florida Consumer Collection*

*Practices Act*, § 559.55, Fla. Stat., *et seq.* ("**FCCPA**"), and against Experian, Equifax, and Trans Union for violations of the *Fair Credit Reporting Act*, 15 U.S.C. §1681, *et seq.* ("**FCRA**").

## JURISDICTION AND VENUE

2.    Subject matter jurisdiction for Plaintiff's federal claims arises under the FCRA, 15 U.S.C. § 1681p, the FDCPA, 15 USC 1692k(d), and 28 U.S.C. § 1331.

3.    This Court has supplemental jurisdiction for Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

4.    The Defendants are subject to the provisions of the FDCPA, the FCCPA, the FCRA, and to the jurisdiction of this Court pursuant to § 48.193, Fla. Stat., and Fed. R. Civ. P. 4(k).

5.    Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. §1391(b)(2) because the acts complained of were committed and / or caused by the Defendants within this District.

## PARTIES

### Ms. Jagoda

6.    **Ms. Jagoda** is a natural person residing in Pasco County, Florida. She was previously known as **Shanna Ramsdell**.

7.    Ms. Jagoda is a *Consumer* as defined by the FCRA, 15 U.S.C. § 1681a(c),

the FDCPA, 15 U.S.C. § 1692a(3), and the FCCPA, § 559.55(8), Fla. Stat.

### Experian

8.     **Experian** is an Ohio corporation, with a principal business address of 475 Anton Blvd., Costa Mesa CA 92626.

9.     Experian is registered to conduct business in the State of Florida, where its registered agent is **CT Corporation System, 1200 South Pine Island Rd. Plantation, FL 33324**.

### Equifax

10.     **Equifax** is a Georgia limited liability company, with a principal business address of 1550 Peachtree Street NW, H-46, Atlanta, GA 30309.

11.     Equifax is registered to conduct business in the State of Florida, where its Registered Agent is **Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301**.

### Trans Union

12.     **Trans Union** is a Delaware limited liability company, with a principal business address of 555 West Adams Street, Chicago, IL 60661.

13.     Trans Union is registered to conduct business in the State of Florida, where its registered agent is **Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301**.

14.     Experian, Equifax, and Trans Union are *Consumer Credit Reporting*

*Agencies* ("**CRAs**") within the meaning of the FCRA, 15 U.S.C. § 1681a(f), in that they, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engage in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and use various means of interstate commerce for the purpose of preparing or furnishing consumer reports, specifically including mail and telephone communications.

15.     As CRAs, Experian, Equifax, and Trans Union know their obligations under the FCRA.

### Ideal and Fougerousse

16.     **Ideal** is a Florida corporation with a primary address of 5223-A Ehrlich Rd., Tampa, FL 33624.

17.     Ideal's Florida registered agent is **Brady Fougerousse, 5223-A Ehrlich Rd., Tampa, FL 33624**.

18.     **Fougerousse** is a natural person, and the President, Secretary and Treasurer of Ideal. Her place of business is 5223-A Ehrlich Rd., Tampa, FL 33624.

19.     Ideal and Fougerousse are *Debt Collectors* within the meaning of the FDCPA, 15 U.S.C. § 1692a(6), and the FCCPA, § 559.55(7), Fla. Stat., in that they use instrumentalities of commerce, including postal mail and the internet, interstate and within the State of Florida, for their business, the principal purpose

of which is the collection of debts, and/or they regularly collect or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due to others.

### Burton

20.    **Burton** is a Florida limited liability company with a primary address of 4832 Richmond Rd., Suite 200, Cleveland, OH 44128.

21.    Burton's Florida registered agent is **Robert G. Risman, 6462 Central Ave., St. Petersburg, FL 33707**.

### FACTUAL ALLEGATIONS

22.    Previously, Ms. Jagoda and her husband resided at Trinity Palms at Seven Springs ("Trinity"), an apartment complex in New Port Richey, Florida.

23.    Trinity is managed by Burton.

24.    Ms. Jagoda and her husband moved from Trinity in or around October 2022.

25.    At some point after this, Burton claimed Ms. Jagoda and her husband jointly owed a total of $379 to it (the "First Debt").

26.    In January 2023, Burton placed the First Debt with Ideal for collection.

27.    Ideal assigned the First Debt account number 2310011823005. **SEE PLAINTIFF'S EXHIBIT A.**

28.    Ideal mailed collections communications to Ms. Jagoda in which it attempted to collect the $379 from her.

29.    Ms. Jagoda disputes owing Burton or Trinity any amount.

30.    In July 2023, Burton instructed Ideal to collect a *second* $379 debt from Ms. Jagoda (the "Second Debt).

31.    Ideal, at Burton's request, therefore attempted to collect $758 from Ms. Jagoda.

32.    There is no basis for claiming that Ms. Jagoda owes a sum total of $758.

33.    Even tabling the validity of the disputed amount, there is no factual basis for the Second Debt.

34.    Ideal assigned the Second Debt account number 231007283001. *Id.*

35.    Ideal mailed Ms. Jagoda collection communications attempting to collect the Second Debt.

36.    Ideal failed to utilize reasonable procedures to ensure it was not actively collecting the same debt twice from the same consumer; indeed, it had no procedures whatsoever to safeguard from duplicate debts being pursued simultaneously.

37.    Fougerousse, the president, secretary and treasurer of Ideal, easily could have implemented procedures to ensure Ideal quickly cross-checked new

debts against its existing database of debts to prevent Ideal from pursuing the same consumer for the same debt twice, but she did not.

38.    Around September 2023, Ideal began reporting the First Debt to Experian, Equifax, and Trans Union as an unpaid collection account.

39.    Around February 2024, Ideal began reporting a second tradeline concerning the purported Second Debt to Experian, Equifax, and Trans Union.

40.    This duplicative reporting of the improperly doubled and disputed debts resulted in two different collection tradelines appearing on Ms. Jagoda's credit reports.

41.    Credit-scoring models, algorithms, and software systems consider the number collection accounts a consumer has when evaluating creditworthiness.

42.    The more collection accounts a consumer has, the more negative their creditworthiness will be portrayed to third parties.

43.    Credit-scoring and lending models, algorithms, and software systems consider the total amount of debt a consumer has when evaluating their creditworthiness.

44.    The more consumer debt a consumer has, the more negative their creditworthiness will be portrayed to third parties.

45.    The First Debt and the Second Debt allegedly arose from expenses for family, personal, or household purposes, specifically charges related to an

apartment rental, and therefore the debts meet the definitions of *Debt* under the FDCPA, 15 U.S.C. § 1692a(5), and the FCCPA, § 559.55(6), Fla. Stat.

46. Reporting a debt to a CRA is an attempt to collect the debt alleged therein. *Denan v. Trans Union LLC*, No. 19-1519, at *6 (7th Cir. May 11, 2020) ("Consumer reporting agencies and furnishers, though interrelated, serve discrete functions: furnishers report data to incentivize the repayment of debts, while consumer reporting agencies compile and report that data for a fee."); *Edeh v. Midland Credit Management, Inc.*, 728 F. Supp. 2d 1030 (D. Minn. 2010); *Sullivan v. Equifax, Inc.*, No. CIV.A. 01-4336, 2002 WL 799856 *4 (E.D. Pa. Apr. 19, 2002) ("[R]eporting a debt to a credit reporting agency can be seen as a communication in connection with the collection of a debt . . . subject[ing] a debt collector to liability under the FDCPA.");

47. Ideal thus leveraged its position as a furnisher of data to the CRAs to essentially hold Ms. Jagoda's credit hostage.

48. Ideal reported the same account twice to the three largest CRAs in the nation, virtually ensuring it would damage Ms. Jagoda's credit to the point she would have little choice but to eventually pay both the disputed and fabricated debt.

49.    FICO® credit scores heavily consider the number of collection tradelines reported concerning a consumer and how recent those collection accounts were first reported.

50.    Due to the duplication of the Ideal tradelines, Ms. Jagoda's FICO® credit scores were adversely affected.

51.    The duplicate tradelines reported by Ideal were included in credit reports Experian, Equifax, and Trans Union sold about Ms. Jagoda.

52.    Ideal, Fougerousse, Experian, Equifax, and Trans Union knew, or should have known, that there would be almost no situation in which a consumer owed two identical debts in the exact same dollar amount, to the exact same creditor, incurred on the exact same day, which could also be properly reported as *two* different and distinct debt tradelines.

53.    The Credit Reporting Resource Guide, which is the definitive guidebook for the Metro 2 credit reporting language, instructs debt collectors to report the entire balance owed a particular original creditor which relates to the same debt as a single tradeline.

54.    Experian, Equifax, and Trans Union are well aware of the flaws in their systems which frequently fail to catch and remove duplicate tradelines from appearing on consumers' credit reports; the CRAs have been sued over this very issue multiple times in the past.

55.     The inclusion of the duplicate tradelines by Experian, Equifax, and Trans Union caused harm to Ms. Jagoda's credit scores, as the number of collection accounts on a consumer's report adversely affects the consumer's scores.

56.     Likewise, the amount of debt in collection adversely affects the consumer's debt-to-income ratios.

57.     The duplicate tradelines therefore caused unjust harm to Ms. Jagoda and negatively affected her ability to obtain credit.

58.     The false reporting engaged in by Ideal, on behalf of Burton, also caused Ms. Jagoda to suffer embarrassment, anxiety, damage to her reputation, wasted time, and emotional distress from being denied credit and having to dispute the false accounts on her credit report.

59.     In March 2024, Ms. Jagoda's husband disputed the Ideal tradelines to Experian, stating the account was not owed, and moreover, the account was reporting twice on his credit report.

60.     Experian's automated systems initiated an *Automated Consumer Dispute Verification* Request ("**ACDV**") which was delivered to Ideal through a system known as e-OSCAR.

61.     Ideal responded to the ACDV, certifying to Experian that its information was accurate and required no update, change, or modification, beyond adding a narrative comment stating the account information was

disputed.

62.     The Ideal tradeline was a joint tradeline, meaning that the identical account was reported by the CRAs to both Ms. Jagoda's credit report as well as her husband's.

63.     Despite meritorious dispute by her husband of the exact duplicate tradelines appearing on her report, Ideal continued to report the duplicate tradelines to both her credit history as well as her husband's.

64.     If a data furnisher like Ideal decides to report disputed information as verified, "the question of whether the furnisher behaved reasonably will turn on whether the furnisher acquired sufficient evidence to support the conclusion that the information was true." *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295 (11th Cir. 2016).

65.     Zero evidence exists to support the conclusion that Ideal's reported data was true, *e.g.*, that an improperly duplication of a single disputed debt was being reported.

66.     At some point, the duplicate tradeline was deleted from Ms. Jagoda's credit.

67.     However, Ideal, as agent for Burton, continued to report the First Debt, monthly, to the CRAs with respect to both Ms. Jagoda as well as her husband. **SEE PLAINTIFF'S EXHIBIT B.**

68.    At all times relevant, Fougerousse directed and controlled the policies and procedures of Ideal, including its policies of reporting information to the CRAs even when multiple "red flags" indicate the data is unreliable.

69.    Ms. Jagoda has hired the aforementioned law firm to represent her in this matter and has assigned her right to fees and costs to such firm.

## COUNT I
## EXPERIAN'S WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681e(b)

70.    Ms. Jagoda adopts and incorporates paragraphs 1 – 69 as if fully stated herein.

71.    Experian violated **15 U.S.C. § 1681e(b)** by failing to establish, follow, or maintain reasonable procedures to assure the maximum possible accuracy of the information in its credit reports concerning Ms. Jagoda, as it incorporated obviously-duplicated data in reports it sold to third parties.

72.    As a result of this conduct by Experian, Ms. Jagoda has suffered a loss of her personal time, a reduced credit score, financial loss, higher interest rates, lost economic opportunities, and emotional distress.

73.    Experian's conduct, action, and inaction was willful and intentional or, alternately, was engaged in with reckless disregard for its consequences, rendering Experian liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. The existence of duplicate tradelines is

not a novel or new problem for the reporting agency.

74.    As a result of its conduct, Experian is liable to Ms. Jagoda pursuant to the FCRA for statutory damages of up to $1,000 for *each occurrence*, and other relief.

**WHEREFORE,** Ms. Jagoda respectfully requests that this Honorable Court enter judgment against Experian for:

a.    The greater of statutory damages of $1,000 per incident or Ms. Jagoda's actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.    Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.    Reasonable costs and attorneys' fees pursuant to 15 U.S.C. §1681n(a)(3); and,

d.    Such other relief that the Court deems just and proper.

## COUNT II
## EXPERIAN'S NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681e(b)
### (Pled in the alternative to Count I)

75.    Ms. Jagoda adopts and incorporates paragraphs 1 – 69 as if fully stated herein, and pleads this count strictly in the alternative to Count I.

76.    Experian violated **15 U.S.C. § 1681e(b)** by failing to establish, follow, or maintain reasonable procedures to assure the maximum possible accuracy of the information in its credit reports concerning Ms. Jagoda, as it incorporated obviously-duplicated data in reports it sold to third parties.

77.    As a result of this conduct by Experian, Ms. Jagoda has suffered a loss

of her personal time, a reduced credit score, financial loss, higher interest rates, lost economic opportunities, and emotional distress.

78.    Experian acted negligently and is thus liable to Ms. Jagoda, pursuant to 15 U.S.C. § 1681o, for Ms. Jagoda's actual damages, reasonable attorneys' fees, and costs.

**WHEREFORE,** Ms. Jagoda respectfully requests that this Honorable Court enter judgment against Experian for:

a.    Ms. Jagoda's actual damages, pursuant to 15 U.S.C. § 1681o(a)(1);

b.    Reasonable costs and attorneys' fees pursuant to 15 U.S.C. 1681o(a)(2); and,

c.    Such other relief that the Court deems just and proper.

## COUNT III
## <u>EQUIFAX'S WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681e(b)</u>

79.    Ms. Jagoda adopts and incorporates paragraphs 1 – 69 as if fully stated herein.

80.    Equifax violated **15 U.S.C. § 1681e(b)** by failing to establish, follow, or maintain reasonable procedures to assure the maximum possible accuracy of the information in its credit reports concerning Ms. Jagoda, as it incorporated obviously-duplicated data in reports it sold to third parties.

81.    As a result of this conduct by Equifax, Ms. Jagoda has suffered a loss

of her personal time, a reduced credit score, financial loss, higher interest rates, lost economic opportunities, and emotional distress.

82. Equifax's conduct, action, and inaction was willful and intentional or, alternately, was engaged in with reckless disregard for its consequences, rendering Equifax liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. The existence of duplicate tradelines is not a novel or new problem for the reporting agency.

83. As a result of its conduct, Equifax is liable to Ms. Jagoda pursuant to the FCRA for statutory damages of up to $1,000 for *each occurrence*, and other relief.

**WHEREFORE,** Ms. Jagoda respectfully requests that this Honorable Court enter judgment against Equifax for:

a.    The greater of statutory damages of $1,000 per incident or Ms. Jagoda's actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.    Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.    Reasonable costs and attorneys' fees pursuant to 15 U.S.C. §1681n(a)(3); and,

d.    Such other relief that the Court deems just and proper.

**COUNT IV**
**EQUIFAX'S NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681e(b)**
**(Pled in the alternative to Count III)**

84. Ms. Jagoda adopts and incorporates paragraphs 1 – 69 as if fully

stated herein, and pleads this count strictly in the alternative to Count III.

85.    Equifax violated **15 U.S.C. § 1681e(b)** by failing to establish, follow, or maintain reasonable procedures to assure the maximum possible accuracy of the information in its credit reports concerning Ms. Jagoda, as it incorporated obviously-duplicated data in reports it sold to third parties.

86.    As a result of this conduct by Equifax, Ms. Jagoda has suffered a loss of her personal time, a reduced credit score, financial loss, higher interest rates, lost economic opportunities, and emotional distress.

87.    Equifax acted negligently and is thus liable to Ms. Jagoda, pursuant to 15 U.S.C. § 1681o, for Ms. Jagoda's actual damages, reasonable attorneys' fees, and costs.

**WHEREFORE,** Ms. Jagoda respectfully requests that this Honorable Court enter judgment against Equifax for:

a.    Ms. Jagoda's actual damages, pursuant to 15 U.S.C. § 1681o(a)(1);

b.    Reasonable costs and attorneys' fees pursuant to 15 U.S.C. 1681o(a)(2); and,

c.    Such other relief that the Court deems just and proper

**COUNT V**
**TRANS UNION'S WILLFUL VIOLATIONS OF THE FCRA,**
**15 U.S.C. § 1681e(b)**

88.    Ms. Jagoda adopts and incorporates paragraphs 1 – 69 as if fully

stated herein.

89.    Trans Union violated **15 U.S.C. § 1681e(b)** by failing to establish, follow, or maintain reasonable procedures to assure the maximum possible accuracy of the information in its credit reports concerning Ms. Jagoda, as it incorporated obviously-duplicated data in reports it sold to third parties.

90.    As a result of this conduct by Trans Union, Ms. Jagoda has suffered a loss of her personal time, a reduced credit score, financial loss, higher interest rates, lost economic opportunities, and emotional distress. The existence of duplicate tradelines is not a novel or new problem for the reporting agency.

91.    Trans Union's conduct, action, and inaction was willful and intentional or, alternately, was engaged in with reckless disregard for its consequences, rendering Trans Union liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

92.    As a result of its conduct, Trans Union is liable to Ms. Jagoda pursuant to the FCRA for statutory damages of up to $1,000 for *each occurrence*, and other relief.

**WHEREFORE,** Ms. Jagoda respectfully requests that this Honorable Court enter judgment against Trans Union for:

a.    The greater of statutory damages of $1,000 per incident or Ms. Jagoda's actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.      Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.      Reasonable costs and attorneys' fees pursuant to 15 U.S.C. §1681n(a)(3); and,

d.      Such other relief that the Court deems just and proper.

### COUNT VI
### TRANS UNION'S NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681e(b)
**(Pled in the alternative to Count V)**

93.    Ms. Jagoda adopts and incorporates paragraphs 1 – 69 as if fully stated herein, and pleads this count strictly in the alternative to Count V.

94.    Trans Union violated **15 U.S.C. § 1681e(b)** by failing to establish, follow, or maintain reasonable procedures to assure the maximum possible accuracy of the information in its credit reports concerning Ms. Jagoda, as it incorporated obviously-duplicated data in reports it sold to third parties.

95.    As a result of this conduct by Trans Union, Ms. Jagoda has suffered a loss of her personal time, a reduced credit score, financial loss, higher interest rates, lost economic opportunities, and emotional distress.

96.    Trans Union acted negligently and is thus liable to Ms. Jagoda, pursuant to 15 U.S.C. § 1681o, for Ms. Jagoda's actual damages, reasonable attorneys' fees, and costs.

**WHEREFORE,** Ms. Jagoda respectfully requests that this Honorable Court enter judgment against Trans Union for:

a.    Ms. Jagoda's actual damages, pursuant to 15 U.S.C. § 1681o(a)(1);

b.    Reasonable costs and attorneys' fees pursuant to 15 U.S.C. 1681o(a)(2); and,

c.    Such other relief that the Court deems just and proper.

**COUNT VII**
**VIOLATIONS OF THE FDCPA, 15 U.S.C. § 1692e**
**(Ideal and Fougerousse Only)**

97.    Ms. Jagoda adopts and incorporates paragraphs 1 – 69 as if fully stated herein.

98.    Ideal and Fougerousse violated **15 U.S.C. § 1692e** when Ideal, under the direction of Fougerousse, used false, deceptive, and misleading representations in connection with the collection of a debt by reporting the exact same debt, twice, to the CRAs in February 2024 and March 2024, thus claiming that $758 was owed when, at most and in a light most favorable to Ideal, $379 was owed. Ideal then continued to report the account post-June 2024, even though by that point, its own client, Burton, agreed that no debt was owed.

**WHEREFORE,** Ms. Jagoda respectfully requests that this Honorable Court enter judgment against Ideal and Fougerousse, jointly and severally, for:

a.    Statutory damages of **$1,000**, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

b.     Actual damages, including damages for loss of credit opportunities, damage to credit scores, and emotional distress pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c.     Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

d.     Such other relief that this Court deems just and proper

### COUNT VIII
### <u>VIOLATIONS OF THE FDCPA, 15 U.S.C. § 1692e(10)</u>
### <u>(Ideal and Fougerousse Only)</u>

99.   Ms. Jagoda adopts and incorporates paragraphs 1 – 69 as if fully stated herein.

100.   Ideal and Fougerousse violated **15 U.S.C. § 1692e(10)** when Ideal, under the direction of Fougerousse, used false, deceptive, and misleading representations in connection with the collection of a debt by reporting the exact same debt, twice, to the CRAs in February 2024 and March 2024, thus claiming that $758 was owed when, at most and in a light most favorable to Ideal, $379 was owed. Ideal then continued to report the account post-June 2024, even though by that point, its own client, Burton, agreed that no debt was owed.

**WHEREFORE,** Ms. Jagoda respectfully requests that this Honorable Court enter judgment against Ideal and Fougerousse, jointly and severally, for:

a.     Statutory damages of **$1,000**, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

b.    Actual damages, including damages for loss of credit opportunities, damage to credit scores, and emotional distress pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c.    Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

d.    Such other relief that this Court deems just and proper

**COUNT IX**
**VIOLATIONS OF THE FDCPA, 15 U.S.C. § 1692e(2)(a)**
**(Ideal and Fougerousse Only)**

101.  Ms. Jagoda adopts and incorporates paragraphs 1 – 69 as if fully stated herein.

102.  Ideal and Fougerousse violated **15 U.S.C. § 1692e(2)(a)** when Ideal, under the direction of Fougerousse, made false representations about the character, amount, or legal status of a debt by reporting Ms. Jagoda's purported apartment debt to the CRAs twice as, ostensibly, two "different" debts, thus claiming that $758 was owed when, at most and in a light most favorable to Ideal, $379 was owed. Ideal then continued to report the account post-June 2024, even though by that point, its own client, Burton, agreed that no debt was owed.

**WHEREFORE,** Ms. Jagoda respectfully requests that this Honorable Court enter judgment against Ideal and Fougerousse, jointly and severally, for:

a.    Statutory damages of **$1,000**, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

b.      Actual damages, including damages for loss of credit opportunities, damage to credit scores, and emotional distress pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c.      Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

d.      Such other relief that this Court deems just and proper

**COUNT X**
**VIOLATIONS OF THE FDCPA, 15 U.S.C. § 1692e(8)**
**(Ideal and Fougerousse Only)**

103.   Ms. Jagoda adopts and incorporates paragraphs 1 – 69 as if fully stated herein.

104.   Ideal and Fougerousse violated **15 U.S.C. § 1692e(8)** when Ideal, under the direction of Fougerousse, communicated credit information which they knew, or should have known, to be false when Ideal reported the exact same debt, twice, to the CRAs in February 2024 and March 2024, claiming that $758 was owed when, at most and in a light most favorable to Ideal, $379 was owed. Ideal then continued to report the account post-June 2024, even though by that point, its own client, Burton, agreed that no debt was owed.

**WHEREFORE,** Ms. Jagoda respectfully requests that this Honorable Court enter judgment against Ideal and Fougerousse, jointly and severally, for:

a.      Statutory damages of **$1,000**, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

b.    Actual damages, including damages for loss of credit opportunities, damage to credit scores, and emotional distress pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c.    Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

d.    Such other relief that this Court deems just and proper

**COUNT XI**
**VIOLATIONS OF THE FDCPA, 15 U.S.C. § 1692f**
**(Ideal and Fougerousse Only)**

105.    Ms. Jagoda adopts and incorporates paragraphs 1 – 69 as if fully stated herein.

106.    Ideal and Fougerousse violated **15 U.S.C. § 1692e(f)** when Ideal, under the direction of Fougerousse, used unfair methods to collect a debt, when Ideal intentionally reported information to the CRAs that it knew was not accurate, by reporting a singular $379 debt twice, thus claiming $758 was owed. Ideal continued to report a debt it should have known was now discharged by its own client, Burton, post-June 2024.

**WHEREFORE,** Ms. Jagoda respectfully requests that this Honorable Court enter judgment against Ideal and Fougerousse, jointly and severally, for:

a.    Statutory damages of **$1,000**, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

b.    Actual damages, including damages for loss of credit opportunities, damage to credit scores, and emotional distress pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c.    Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

d.    Such other relief that this Court deems just and proper

**COUNT XII**
**BURTON'S VIOLATIONS OF THE FCCPA, § 559.72(9), FLA. STAT.**

107.    Ms. Jagoda adopts and incorporates paragraphs 1 – 69 as if fully stated herein.

108.    Burton violated **§ 559.72(9), Fla. Stat.**, when, after already placing a $379 debt for collection with Ideal, it sent the exact same debt to Ideal a second time, instructing it to collect another $379 (*i.e.*, a total of $758) from Ms. Jagoda.

109.    Burton knew that, at most, $379 was owed by Ms. Jagoda, although it also knew that was disputed by Ms. Jagoda and her husband.

110.    Burton then continued to instruct its agent to collect a $379 debt from Ms. Burton after June 2024, when it released any claim it even potentially had concerning the Debt.

111.    As such, Burton is liable for the above-stated violations of the FCCPA, and Ms. Jagoda is thereby entitled to statutory damages not to exceed $1,000, plus costs and attorneys' fees.

**WHEREFORE,** Ms. Jagoda respectfully requests that this Honorable Court enter judgment against Burton, for:

a.    Statutory damages of **$1,000** pursuant to Section 559.77(2), Florida Statutes;

b.    Punitive damages pursuant to Section 559.77(2), Florida Statutes;

c.    Reasonable costs and attorneys' fees pursuant to Section 559.77(2), Florida Statutes; and,

d.    Such other relief that this Court deems just and proper.

## COUNT XIII
## NEGLIGENCE – BURTON
## (Pled in the alternative to Count XIII)

112.    Ms. Jagoda adopts and incorporates paragraphs 1 – 69 as if fully stated herein and pleads negligence strictly in the alternative to Count XII.

113.    Burton engaged in gross negligence when, after already placing a $379 debt for collection with Ideal, it sent the exact same debt to Ideal a second time, instructing it to collect another $379 (*i.e.*, a total of $758) from Ms. Jagoda.

114.    This negligence was then exacerbated when it continued to instruct Ideal to collect a $379 from Ms. Jagoda even after releasing any claim it may have had in June 2024.

115.    Burton had a duty of care to ensure it did not attempt to collect more than was lawfully owed by Ms. Jagoda. Burton could easily and reasonably foresee

the adverse, downstream consequences of its actions to Ms. Burton when it placed the $379 debt for collection with Ideal *a second time*. As the result of Burton's actions, Ideal reported false and defamatory information to the CRAs which was then disseminated to other persons, damaging Ms. Burton.

116.    As such, Burton is liable for Ms. Burton's actual damages.

**WHEREFORE,** Ms. Jagoda respectfully requests that this Honorable Court enter judgment against Burton, for:

a.    Actual damages;

b.    Punitive damages;

c.    Reasonable costs and attorneys' fees; and

d.    Such other relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Ms. Jagoda hereby demands a trial on all issues so triable.

Respectfully submitted on January 10, 2025, by:

SERAPH LEGAL, P.A.

*/s/ Brandon D. Morgan*
Brandon D. Morgan, Esq.
Florida Bar No.: 1015954
BMorgan@SeraphLegal.com
Thomas M. Bonan, Esq.
Florida Bar No.: 118103
TBonan@SeraphLegal.com
2124 W. Kennedy Blvd., Suite A
Tampa, Florida 33606
Tel: 813-567-1230
Fax: 855-500-0705
*Counsel for Plaintiff*

## ATTACHED EXHIBIT LIST

A     Duplicate Ideal Tradelines As Reported To Experian March 5, 2024
B     Plaintiff's Experian Disclosure – excerpt, December 11, 2024